UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**JAMES LEE HAYES** and<br>**JENNIFER LYNN HAYES**,<br><br>Debtors.<br><br>**TOM HANSON**, **SUE HANSON**, and<br>**ROSS RICHARDSON**,<br><br>Plaintiffs.<br><br>-vs-<br><br>**KERRY TOLZMANN**,<br><br>Defendant. | Case No. **07-60316-7**<br><br><br><br><br><br>Adv No. **10-00020** |

# MEMORANDUM of DECISION
# and ORDER

At Butte in said District this 19th day of May, 2010.

In this Adversary Proceeding, after due notice, a hearing on the Plaintiffs' Motion for Summary Judgment was held May 11, 2010, in Butte. Charles E. Petaja of Helena, Montana appeared at the hearing on behalf of the Plaintiffs Tom and Sue Hanson, the Chapter 7 Trustee, Ross Richardson of Butte, Montana, appeared on his own behalf, and the Defendant, Kerry Tolzmann ("Tolzmann"), appeared pro se. Plaintiff Tom Hanson testified. No exhibits were offered into evidence.

1

The Plaintiffs filed a Motion for Summary Judgment on April 7, 2010, seeking judgment in their favor. The Plaintiffs' Motion was accompanied by a brief in support thereof and a Statement of Uncontroverted Facts. Tolzmann did not file any response to the pending Motion for Summary Judgment, but did file a response to the Plaintiffs' Complaint on April 12, 2010. In summary, Tolzmann's response is that he would like to continue working toward finishing the pending sales transaction.

## STATEMENT of UNCONTROVERTED FACTS

The Plaintiffs assert the following facts:

1. The standard Buy-Sell Agreement dated 8/8/08 that is the subject matter of this litigation was drafted by Defendant, Kerry Tolzmann. Tolzmann deposition dated 2/25/2010, Pg. 17, L. 22-25; Pg. 18, L. 1-40, as follows:

   Q. "Okay. So at some point, you and Mr. Hayes drafted and signed a Montana standard Buy-Sell Agreement. Obviously, you're aware of that, aren't you?

   A. Right. And Jim had nothing to do with the drafting of it other than me discussing with him what I was trying to accomplish. (Pg. 17)

   Q. So just so we're clear, who did draft that?

   A. I did." (Pg. 18)

2. The $2 million dollar sales contract dated 8/8/08, confirms that the standard realtors buy/sell agreement was signed by Debtors and Defendant, Kerry Tolzmann. Each page of the contract is also initialed, including Page 5, Lines 266-280 containing specific performance as a mutual remedy. (See Exhibit A to Plaintiffs' Complaint).

3. The November 4, 2008, transcript of the hearing testimony of Kerry Tolzmann confirms Mr. Tolzmann's knowledge of the property being sold and purchased. Mr. Tolzmann noted he had visited the property and water skied on the lake. He also noted that he had owned four (4) private water ski lakes and had helped build 6 other water ski lakes (Tr.P. 35-36). Mr. Tolzmann also acknowledged a close friendship with Debtors. (Tolzmann Depo 2/25/10, Pg. 14, L. 19-22).

4.  The November 4, 2008, transcript of the hearing testimony of Kerry Tolzmann confirms that he was financially able to pay the $2 million to purchase the property, "Yes, of course I am". (Tr.P. 37, L. 22). He further confirmed there was no issue getting financing. (Tr.P.39, L.1-2).

5.  The November 4, 2008, transcript of the hearing testimony of Kerry Tolzmann confirms that the $2.5 million dollar appraisal contingency was removed from the parties' buy/sell agreement per questions from the Court. (Tr.P. 55, L. 7-25; P. 56, L. 1-7).

6.  The November 4, 2008, transcript of the hearing testimony of Kerry Tolzmann confirms that the inspection contingency (well/septic/easement inspections) are not disputed and were stipulated to by Kerry Tolzmann. (Tr. P. 56, L. 12-25).

7.  The November 24, 2008, continuation hearing testimony of Kerry Tolzmann confirmed that Kerry Tolzmann was involved in the drafting of the By-Laws proposed and drafted by Debtor, Jim Hayes. Testimony further confirmed Mr. Tolzmann was aware of landowners objections to the same. (Tr.P. 234, L. 11-18; P. 235, L. 1-16).

8.  Finally, the November 24, 2008, continuation hearing testimony of Kerry Tolzmann, upon questioning by the Court, confirms that the proposed By-Laws as drafted by Debtor and Mr. Tolzmann would satisfy the conditions of the Buy-Sell Agreement. At Page 239, Lines 9-11, Kerry Tolzmann stated, "Yes Sir, your Honor, these would be fine - the 2008 Exhibit 2 By-Laws would work."

9.  At the November 24, 2008, continuation hearing testimony of Kerry Tolzmann, the witness clarified his lack of 100% commitment being only based on future enforcement actions. The witness acknowledged that in any business transaction, you can't exclude or prevent litigation. (Tr.P. 241, L. 24-25; P. 242, L. 1-4).

10. On January 7, 2009, the Bankruptcy Court entered formal orders and judgment approving the $2 million dollar sales contract between Debtor and Kerry Tolzmann. The Court also approved and unilaterally adopted the By-Laws as proposed by Debtors (Exhibit 2), which had been drafted by Debtors in consultation with Kerry Tolzmann. The Bankruptcy Court overruled all landowners' objection to the By-Laws as proposed, with one small exception concerning a rewrite of the guest policy. Judicial notice of the January 7, 2009, Court decision is requested.

11. On August 17, 2009, the BAP affirmed the Bankruptcy Court's Order dated January 7, 2009, including the unilateral adoption of By-Laws as proposed by the

Debtor (Exhibit 2) which had been drafted in consultation with Kerry Tolzmann. Judicial notice of the BAP decision dated August 17, 2009, is requested.

12. That from the Bankruptcy Court's decision of January 7, 2009 to the BAP's decision on August 17, 2009, to the present time, Kerry Tolzmann has not notified the Court, the Chapter 13 Trustee, any of the Chapter 13 creditors, or even the Debtors that he was rescinding the sales contract for $2 million dollars dated August 8, 2008.

13. That from January 7, 2009 through the present time, there is no formal complaint of record that any landowner has ever directly attempted to contact Kerry Tolzmann to discourage, stop or interfere with the $2 million dollar sales contract. To the contrary, the landowners withdrew their objection to the sales agreement at the bankruptcy hearings on November 4, 2008 and November 24, 2008. (See Tolzmann Deposition - 2/25/10, Pg. 17-20)

14. That from January 7, 2009 to the present time, the landowners have not initiated or threatened any litigation against either Defendant, Kerry Tolzmann or Debtors. To the contrary, Debtors' initiated contempt proceedings against the landowners, which included requests to void all landowners' rights to use Serenity Lake. (See Debtors' Motion to Hold Landowners in Contempt filed 12/10/09).

15. That by letter dated October 7, 2009, Defendant, Kerry Tolzmann, requested Debtors' attorney to commence contempt proceedings against the landowners including requests that all landowner rights be voided. (See Exhibit C - Letter from Defendant, Kerry Tolzmann to attorney Greg Duncan, attached to Debtors' Motion for Contempt dated 12/10/09).

16. Defendant, Kerry Tolzmann's deposition testimony dated 2/25/10, clearly states that Kerry Tolzmann intends to have all landowner rights to use Serenity Lake stopped prior to this completion of the $2 million dollar sales contract dated 8/8/08. (See Tolzmann Deposition - Pg. 44, L. 24-25; Pg. 45, L. 1-3, Pg. 46, L. 1-10; Pg. 48, L. 9-19).

    A. My specific vision today, which did not exist at the time I wrote the original buy/sell, would be that the landowners, the property owners, in my opinion and in my desire, would be for them to have their whatever contract, covenant, whatever, stripped entirely . . . (Pgs. 44-45)

    ... what the Hayes' have asked in their motion for the Court to do, is to have their rights stripped. There is no proposal that there would be a negotiation or anything like that. The request is to have their rights stripped. Do you understand that? (Pg. 46)

4

  A. I haven't read that, but I understand. And I've talked about that and Greg disagrees. But, Mike, I think there is a 50/50 chance that is what is going to happen here.

  Q. In your mind, if that happens, this lake, then, will be worth two million dollars to you?

  A. Absolutely.

  Q. How much is it worth to you today?

  A. It's not worth anything to anybody today. (Pg. 47)

  Q. How, in your mind, does the contempt hearing resolve those issues?

  A. The contempt hearing, I don't believe the contempt hearing does resolve the issues. I never said that it did.

  Q. So ever if the Hayes' are successful and the Court orders the landowners in contempt, that will not satisfy your contingencies?

  A. No, because it could start all over again in two years from now or whatever. We could be having the same discussion.

17. That since August 11, 2009, Defendant, Kerry Tolzmann, has refused and continues to refuse to complete and perform his contract with Debtors. That Defendant, Kerry Tolzmann, has not completed purchase of Debtors' real and personal property and has not paid the required $2 million dollar consideration to the Chapter 13 Trustee as required by Debtors' Chapter 13 Plan and as ordered by the Bankruptcy Court.

18. It is obvious that Defendant has intentionally backed out of his written contractual agreements and has failed to perform his written contract dated August 8, 2008. That as a direct result of Defendant's failure to perform his written contract, none of the Chapter 13 creditors have been paid, including Plaintiffs, Tom and Sue Hanson.

19. That as a direct result of Defendant's failure to perform his Court approved $2 million dollar Buy-Sell Agreement with Debtors, that Debtors' property will be subject to immediate foreclosure action by HSBC Bank to the detriment of all creditors of the bankruptcy, including Tom and Sue Hanson.

20. That Debtors have not sought specific performance of their $2 million dollar sales

      contract with Kerry Tolzmann, which if enforced, would pay all creditors of the bankruptcy estate, plus additional sum of money to Debtors. Debtors' failure to pursue their remedy of specific performance constitutes waste and abandonment of bankruptcy estate assets and constitutes bad faith on the part of Debtors.

21.    That secured creditors, Tom and Sue Hanson, are direct, third party beneficiaries to the Buy/Sell Agreement dated August 8, 2008, between Debtors and Kerry Tolzmann. The Hansons are secured creditors in Debtors' Chapter 13 Bankruptcy Plan per Proof of Claim No. 9 filed with the Court on May 15, 2007 for the sum of $285,194.00, plus 8% interest from May 7, 2007 to the present time. That the total now due the Hansons is $350,391.02, per the Hanson's Exhibit 2 in support of Motion to Compel. That the Debtors' sales agreement with Kerry Tolzmann was approved by the Court as part of the Debtors' Chapter 13 Plan for the direct benefit of all creditors of the bankruptcy estate, including the Hansons. The Hansons are therefore entitled to seek specific performance of the Debtors' contract. See Hartman v. Mia Service, 260 Mont. 67, 858 P.2d 19 (1993); *Helmsman v. Management Services Inc. v. Colorado Dept. Of Labor*, 31 P.3d 895 (2000); and *Baldwin v. Leach*, 115 Idaho 713, 769 P.2d 590 (1989). *See also* Bankruptcy Court Order dated January 6, 2010, which specifically authorized the Hansons to pursue the contracted remedy of specific performance as third party beneficiaries.

22.    That the Hansons have incurred substantial attorney fees and costs from the onset of Debtors' bankruptcy to the present time. The Hansons have supported the $2 million dollar sales contract with Kerry Tolzmann and the adoption of the Buy-Laws for regulation of the use of the lake by landowners. Tom and Sue Hanson should be awarded reasonable attorney fees and costs incurred in enforcing Debtors' sales contract with Kerry Tolzmann and for the effort in preserving the bankruptcy estate.

Tolzmann has not filed a Statement of Genuine Issues as required by Mont. LBR 7056-1(a)(2). Thus, pursuant to Mont. LBR 7056-1(a)(3), all material facts set forth in the Plaintiffs' Statement of Uncontroverted Facts are deemed admitted by Tolzmann.

### SUMMARY JUDGMENT

Summary judgment is governed by FED.R.BANKR.P. 7056. Rule 7056, incorporating FED.R.CIV.P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

6

as to any material fact and that the movant is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)). The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (Brennan dissent) (citations omitted). *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth

specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id*.

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine

whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.  *T.W. Elec. Serv.*, 809 F.2d at 631.  In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

### DISCUSSION

This Court affords Tolzmann the benefit of the doubt with respect to the sufficiency of his allegations and the Court construes his response to the Plaintiffs' complaint liberally, and his aforementioned pleading is held 'to less stringent standards than formal pleadings drafted by lawyers[.]'  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  *See also Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989).

Pursuant to MONT. CODE ANN. ("MCA") § 27-1-411(4), the remedy of specific performance may be compelled when "it has been expressly agreed in writing, between the parties to the contract, that specific performance thereof may be required by either party or that damages shall not be considered adequate relief."  The standard Buy-Sell Agreement between Debtors and Tolzmann provides, under the seller's remedies, that in the event the Debtors accepted the offer set forth in the Buy-Sell Agreement, which Debtors did, and if Tolzmann refuses or neglects to consummate the sale, that the Debtors may "[d]emand that [Tolzmann] specifically perform [Tolzmann's] duties and obligations" under the Buy-Sell Agreement.

In *Hillstrom v. O'Neill*, 226 Mont. 452, 736 P.2d 126 (Mont. 1987), the Montana Supreme Court affirmed the District Court's grant of summary judgment and granted a vendor (seller) the right to seek and compel specific performance of their land sales contract with

9

purchaser. The Montana Supreme Court rejected the purchaser's contentions that the seller failed to complete essential conditions including surveys, assignments, and title insurance. The Court also rejected the purchaser's contention that the buy sell agreement was unenforceable due to mistakes concerning the extent and complexity of subdivision regulation. The Supreme Court noted that the purchaser was an experienced businessman, who had purchased and sold numerous homes and was aware of obstacles involved in subdivision approval. The Court in *Hillstrom* explained:

> Section 27-1-411(4), MCA, provides that specific performance may be compelled when the parties to a contract have expressly agreed in writing that specific performance shall be an available remedy. The buy-sell agreement signed by the parties expressly provided for a remedy of specific performance and Hillstroms were entitled to pursue this remedy.
>
> * * *
>
> O'Neil was under the duty to execute the buy-sell agreement with the prudence and care of a reasonable and cautious businessman. *Quinn v. Briggs* (1977), 172 Mont. 468, 565 P.2d 297. The record shows O'Neil is an experienced businessman who has operated 6 silver companies including the largest silver recycling company in the country, purchased and sold numerous homes, and he is the sole stockholder of a corporation which owns a ranch in Gallatin County adjacent to the land under dispute in this case.

*Hillstrom*, 226 Mont. at 455-56.

This case is similar to *Hillstrom* in that Tolzmann has held himself out as a sophisticated and experienced businessman. Tolzmann also claims that he has owned, operated and developed numerous water ski lakes. Tolzmann has also visited and skied on Serenity Lake, and is thus very familiar with the property that is the subject of the Buy-Sell Agreement. Tolzmann is also a close friend with the Debtors, who own the subject water ski lake in this case. Tolzmann was keenly aware of the ongoing problems with the landowners at WSME and actively participated in

drafting bylaws to bring an end to the disputes between the lake owner and the landowners at WSME. This Court specifically approved, with the exception of one guest policy provision, the bylaws.

Tolzmann drafted the August 8, 2008, Buy-Sell Agreement and included a financing contingency, an appraisal contingency, a title contingency and an addendum of contingencies which are as follows:

> Line 191 This Agreement is contingent upon - (Buyer response) Satisfactory resolution of legal challenges to private property owners or property know as Serenity Lake address listed above. A resolution must specify the use and (user) conditions, covenants and operating agreements protecting the property owners commercial and non-commercial values being contested by Water Ski Mania Estates (WSME) homeowners before a purchase agreement of any credibility can be reached.
>
> Line 194 This Agreement is contingent upon - (Buyer response) enforceable court ordered provisions for property owner redress of value upon failure of WSME to abide by agreed rules and conditions of an Operating Agreement.
>
> Line 197 ADDITIONAL PROVISIONS - (Buyer response) The existing legal conditions appear to allow WSME unrestricted access to Serenity Lake resulting in property value loss and interference with Serenity Lake's legal property owners. Any and all interference with property owner rights must have enforceable conditions or penalties that are clearly defined and can be enforced within a reasonable time. Prevailing party would be entitled to reasonable legal fees and costs.

The title contingency does not appear to be an issue and at prior hearings, Tolzmann agreed to remove various other contingencies except for the addendum of contingencies. The Court removed the addendum of contingencies as set forth at lines 191, 194 and 197 of the Buy-Sell Agreement, when it issued a Memorandum of Decision and Order on January 7, 2009, in Debtors' main bankruptcy case, approving, with the exception of a guest policy, the Bylaws of Water Ski Mania, LLC drafted by Debtors and Tolzmann, which ruling was affirmed by the

United State Bankruptcy Appellate Panel of Ninth Circuit Court of Appeals on August 11, 2009.

To date, Tolzmann has not made any effort to rescind the Buy-Sell Agreement and in fact, at the May 11, 2010, hearing, stated that he still intends to follow through with the Buy-Sell Agreement. For the reasons discussed above, the Court finds that the remedy of specific performance is appropriate in this case. Accordingly,

IT IS ORDERED that a separate Judgment shall be entered in favor of the Plaintiffs and against the Defendant; Defendant shall have sixty (60) days from the date of the Memorandum of Decision and Order, and Judgment to consummate the $2 million sale contemplated by the August 8, 2008, Buy-Sell Agreement between the Debtors and Kerry Tolzmann; and the Plaintiffs are awarded the costs of bringing and prosecuting the above-captioned Adversary Proceeding.

BY THE COURT

/s/ Ralph B. Kirscher

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana